HAROLD DEAN AND RUTH IDA DICKSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dickson v. Commissioner
Docket No. 27282-88
United States Tax Court
T.C. Memo 1990-177; 1990 Tax Ct. Memo LEXIS 190; 59 T.C.M. (CCH) 314; 12 Employee Benefits Cas. (BNA) 1310; T.C.M. (RIA) 90177; April 4, 1990
Harold Dean Dickson, pro se. D. Lyndell Pickett, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' 1985 Federal income tax of $ 1,279. The sole issue for decision is whether petitioners erroneously used the ten-year averaging method to compute their tax liability arising from a pension plan distribution received in 1985. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Louisville, Kentucky, when they filed the petition in this case. They filed a joint Federal income tax return for 1985, the year at issue. Harold Dean Dickson (hereinafter petitioner) began working at Baldwin-United Mortgage Company (Baldwin Mortgage), *192 a subsidiary of Baldwin-United Corporation (Baldwin-United), in the 1970s. In conjunction with this employment petitioner participated in the Baldwin-United Corporation Pension Plan for Salaried Employees (the Baldwin-United Plan). The Central Bank of Denver served as trustee of this plan. By an agreement dated June 28, 1983, E. F. Hutton & Company, Inc. agreed to purchase substantially all the assets of a number of Baldwin-United subsidiaries, including Baldwin Mortgage and the Colwell Company. At this time the Colwell Company administered its own set of pension plans, including the Colwell Company First Amended Pension Plan (the Colwell Company Plan), [1] which was separate and apart from the Baldwin-United Plan. Following an assignment of its rights under the purchase agreement by E. F. Hutton & Company to E. F. Hutton Group, Inc., E. F. Hutton Group assigned its rights under the purchase agreement to a group of corporations headed by Mercury Savings Association (the Mercury Group). This assumption by the Mercury Group occurred via an agreement dated August 18, 1983. By the terms of the assumption agreement one member of the Mercury Group, Colwell Financial Corporation (Colwell *193 Financial) agreed to be the sponsoring employer under the Colwell Company Plan. No such provision was made with regard to the Baldwin-United Plan. After completion of these transactions petitioner was an employee of Colwell Financial. Petitioner's day-to-day employment was uninterrupted by this asset transfer and change of employers. In a letter dated November 23, 1983, the Baldwin-United Benefit Plans Administrative Committee directed the Central Bank of Denver to transfer $ 428,464.93 from the Baldwin-United Plan to the First Interstate Bank of California, trustee for the Colwell Company Plan. The $ 428,464.93 represented the benefits accrued participants in the Baldwin-United Plan whose former employers' assets had been substantially sold to the Mercury Group. Petitioner fell into this group. In a management memo dated February 1, 1984, Colwell Financial informed its employees that the *194 Colwell Company Plan had been terminated. The memo stated that arrangements were being made to distribute participants' benefits, and that "The former Baldwin-United Mortgage * * * plan participants will receive only those funds transferred to Colwell from the Baldwin-United Corporation plan or plans [plus] accrued interest at current rates." In 1985 petitioner received a $ 6,383.23 distribution from the Colwell Company Plan. These funds were transferred from the First Interstate Bank of California. On their 1985 joint Federal income tax return petitioners reported receipt of the distribution according to the ten-year averaging method of section 402(e)(1). [2] In his notice of deficiency respondent determined that petitioners were not entitled to use ten-year averaging, and, as a result, that they were required to include the entire $ 6,383.23 in income in 1985. OPINION Section 451(a) provides that: The amount of any item of gross income shall be included in the gross *195 income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period. It is respondent's position that this general rule required petitioners to include the entire $ 6,383.23 in income in 1985. In contrast, petitioners contend that their receipt of this distribution was excepted from section 451(a)'s ambit because it qualified for the ten-year averaging method of accounting provided by section 402(e)(1). Petitioners bear the burden of proof. Rule 142(a). As applicable to 1985 returns, section 402(e)(1) permits taxpayers to recognize their ordinary income portions of certain pension plan distributions according to a ten-year averaging method of accounting. In order to qualify for ten-year averaging, a distribution must, inter alia, be a "lump sum distribution." Sec. 402(e)(1)(A). The sole issue contested by the parties is whether the $ 6,383.23 distribution received by petitioner qualified as a lump sum distribution by virtue of its having been received on account of petitioner's separation from service. See sec. 402(e)(4)(A)(iii). [3]
*196 By its terms, section 402(e)(4)(A)(iii) contains two prerequisites to qualification for ten-year averaging: (1) a separation from service, and (2) that a distribution or payment became payable on account of that separation. We hold that petitioners have failed to carry their burden of proof with regard to requirement (2). The record in this case is incomplete, and simply does not establish the causal link between petitioner's change of employers and his receipt of the distribution necessary to petitioners' case. Based on the evidence before us, we cannot find that Colwell Financial's decision to make the distribution to petitioner was on account of the sale of the business and petitioner's change of employer, i.e., that it was not a business decision subsequent to and independent of the sale of the business. [4] As a result, respondent must necessarily prevail, and we need not address the question of whether petitioner experienced a separation from service. *197 Decision will be entered for the respondent. Footnotes
1. Some documents in evidence refer to a Colwell Company First Amended Pension Plan; others to a Colwell Company First Amended Pension Trust Plan. Neither party distinguished between the two, and the evidence before us indicates that both titles refer to the same plan. We so find.↩
2. All statutory references are to the Internal Revenue Code, as in effect for the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
3. Sec. 402(e)(4)(A), in relevant part, defines a lump-sum distribution as a: distribution or payment * * * which becomes payable to the recipient -- (i) on account of the employee's death, (ii) after the employee attains age 59 1/2, (iii) on account of the employee's separation from the service, or (iv) after the employee has become disabled (within the meaning of section 72(m)(7)) * * * Petitioners did not contend, and offered no evidence to support a contention that petitioner's receipt of the $ 6,383.23 distribution qualified as a lump sum distribution under clauses (i), (ii), or (iv). As a result, we consider these issues to have been conceded by petitioners and do not further address them.↩
4. While we note the Sixth Circuit's observation that "the statute does not require the distribution to be solely↩ on account of separation from the service," (emphasis in original), we reiterate that petitioners have established no causal link between petitioner's change of employers and his receipt of the distribution. Proof of mere correlation, without more, does not satisfy us that the statutorily required causal connection was present in this case. See , affd. .